UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PUBLIC FREE WILL CORP.,

                Plaintiff,

      - against -                             **MEMORANDUM AND ORDER**
                                                         15-CV-6354 (RRM) (JO)
VERIZON COMMUNICATIONS INC.,

                Defendant.
-----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

This action began in September 2015 in the Supreme Court of the State of New York, Kings County, under Index Number 11555/15, (*see* Notice of Removal (Doc. No. 1) at 1–2 (Electronic Case Filing System ("ECF") pagination)), and was removed to this Court on November 5, 2015, pursuant to 28 U.S.C. §§ 1131, 1367(a), 1441.[1] (*See generally id.*) On March 15, 2015, Public Free Will Corp. ("PFW") filed an amended complaint as plaintiff, asserting the following causes of action against defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon"): (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1125; (2) trademark infringement under New York state law; and (3) tortious interference with prospective economic advantage under New York state law. (Am. Compl. (Doc. No. 13) at ¶¶ 34–36.) PFW seeks injunctive relief, attorney's fees, and compensatory, treble, and statutory damages. (*Id.* at ¶¶ 23, 38.)

Before the Court is Verizon's motion to dismiss PFW's amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief

---

[1] In the state court action, Marie Sander, the founder of Public Free Will Corp. ("PFW"), commenced the action *pro se* in her individual capacity. (*See generally* Notice of Removal.) In order to assert a violation of PFW's rights, Sander substituted PFW as the plaintiff in her amended complaint and obtained counsel to appear on behalf of the corporate entity PFW. (*See generally* Am. Compl.; 12/18/15 Min. Entry (Doc. No. 10).) Counsel sought to withdraw, and his initial motion was denied. *See* Docket Entry dated 5/18/2016. A second motion to withdraw is pending (Doc. No. 31) and is denied as moot.

can be granted. (*See* Mot. Dismiss (Doc. No. 26-1).) For the reasons that follow, Verizon's motion is granted in its entirety.

## BACKGROUND

The following facts are taken from PFW's amended complaint and considered true for purposes of this motion to dismiss. PFW is a not-for-profit corporation that seeks to create "housing for homeless veterans and disadvantaged individuals." (Am. Compl. at ¶ 9.) On April 11, 2014, in preparation for launching PFW, PFW's founder, Marie Sander, filed an application for a Certificate of Incorporation with the New York State Department of State ("DOS") under the entity name "Public Free Will Corp." (*Id.* at ¶ 13, Ex. I.) Subsequently, Sander filed an application for "Recognition of Exemption under 501(c)(3) of the Internal Revenue Code" under the entity name "Free-Will." (*Id.* at ¶ 15, Ex. III.)

Also in April 2014, Sander applied for a $2.6 million grant from the Veteran's Administration (the "VA") to finance her acquisition of a facility to house prospective clients. (*Id.* at ¶ 16.) The grant application stated that an entity named "Free Will" would operate the facility. (*Id.*) The VA, however, allegedly "refused to proceed with paperwork naming Public Free Will as the applicant on the basis that the name Public Free Will was being used by others, and thus was not available to Plaintiff." (*Id.* at ¶ 19.) PFW claims that the VA refused to process the grant application because, at some point after Sander registered "Public Free Will Corp." with the DOS, "Verizon commenced a widespread multi-medium advertising campaign for a telecommunication service featuring the term 'Free Will.'" (*Id.* at ¶¶ 17, 19.)

In its amended complaint, PFW asserts that Verizon is liable for: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1125; (2) trademark infringement under New York State law; and (3) tortious interference with prospective economic advantage under New York law. (*Id.* at ¶¶ 24–36.) PFW seeks damages in the amount of the grant sought from the

VA; costs and attorneys' fees; and "compensatory, treble, and/or statutory damages." (*See id.* at ¶¶ 23, 38.) PFW also seeks injunctive relief. (*See id.* at ¶ 38.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). The Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal* 556 U.S. at 678.

In the context of trademark infringement claims, a complaint fails under Rule 12(b)(6) if it "consists of conclusory allegations unsupported by factual assertions." *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (internal citation and quotation marks omitted). In particular, "the mere assertion" that a defendant's conduct "would constitute trademark infringement and dilution, without any factual allegations concerning the nature of the threatened use, does not give the defendant[] fair notice of the claims against [it] and does not show, by facts alleged, that [the plaintiff] is entitled to relief." *Id.*; *see also Associated Press v.*

3

*All Headline News Corp.*, 608 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (dismissing trademark infringement claim for failure to state a claim because "[i]t is unclear from the Amended Complaint precisely what conduct by the defendants is alleged to have infringed the plaintiff's marks").

**DISCUSSION**

**I.  Trademark Infringement**

PFW claims that Verizon infringed on its trademark in violation of both the Lanham Act and New York state law.[2] The analysis of trademark infringement claims under New York law mirrors the analysis of trademark infringement claims under the federal Lanham Act. *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 548 (E.D.N.Y. 2007) ("[T]he elements necessary to prevail on common law causes of action for trademark infringement . . . mirror Lanham Act claims.") (quoting *Info. Superhighway, Inc. v. Talk Amer., Inc.* 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005)); *Gluco Perfect, LLC v. Perfect Gluco Prod., Inc.*, No. 14-CV-1678 (KAM) (RER), 2014 WL 4966102, at *19 (E.D.N.Y. Oct. 3, 2014) ("The standards for trademark and trade name infringement under New York law are identical to those under the Lanham Act.") (citing *ESPN, Inc. v. Quicksilver, Inc.,* 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (collecting cases). As such, the Court analyzes PFW's federal and state law trademark infringement claims as one.

The Lanham Act prohibits the "use in commerce" of "any word, term, name, symbol, or device, or any combination thereof," that "is likely to cause confusion" or "misrepresents the nature" of a plaintiff's or "another person's goods [or] services . . . in commercial advertising or promotion . . . ." 15 U.S.C. § 1125. The Lanham Act protects registered marks under 15 U.S.C.

---

[2] It is unclear exactly what terms form the basis of PFW's claims, as the amended complaint refers interchangeably to "Public Free Will Corp." and "Free-Will" when discussing PFW's asserted trademark. (*See* Am. Compl. at ¶¶ 13, 15, 26, 29, 38, Ex. I, Ex. III.)

4

§ 1114(a) and both registered and unregistered marks under 15 U.S.C. § 1125(a). Here, PFW does not allege that it registered its mark with the U.S. Patent and Trademark Office; thus, PFW alleges trademark infringement pursuant to 15 U.S.C. § 1125(a). (*See* Am. Compl. at 8.) Although the parties cite to cases in their briefs that analyze trademark infringement claims pursuant to both 15 U.S.C. § 1114(a) and § 1125(a), the Court notes that the standards under either statute are substantially similar for purposes of this motion. *See Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) ("Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law."); (*See generally* Mot. Dismiss; Pl.'s Opp'n Mot. Dismiss (Doc. No. 25-1); Def.'s Reply Mot. Dismiss (Doc. No. 27).)

In order to state a claim for trademark infringement under the Lanham Act, a plaintiff must establish that (1) the plaintiff has a valid trademark that is entitled to protection under the Lanham Act; (2) the defendant used the trademark in commerce without the plaintiff's consent; and (3) there was likelihood of consumer confusion due to the defendant's use of the trademark. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (citation omitted); *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *see also Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 153 (E.D.N.Y. 2016). The Lanham Act protects marks related to both goods and services. *See* 15 U.S.C. § 1127. Here, PFW does not allege that its mark relates to goods, but rather that its mark relates to services rendered to "homeless veterans and disadvantaged individuals." (Am. Compl. at ¶¶ 9, 25–26.) The Second Circuit has defined "services" protected under the Lanham Act as "the performance of labor for the benefit of another." *Morningside Grp. Ltd. v. Morningside Capital*

*Grp., L.L.C.*, 182 F.3d 133, 137 (2d Cir. 1999). Although both parties use the term "trademark" throughout their briefs, a mark used in connection with the rendering of services is referred to as a "service mark." *Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 926 (2d Cir. 1990). The standards for protection of trade and service marks are identical. *Id.* at 927.

A. Protectable Trademark

As a threshold matter for trademark infringement claims, the plaintiff must first demonstrate its own right to use the mark in question. *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 105 (E.D.N.Y. 2012) (citing *Buti v. Perosa, S.R.L.*, 139 F.3d 98, 103 (2d Cir. 1998)). A party establishes ownership rights to a mark when it is "the first-to-use" the mark in commerce, "not the first-to-register" the mark. *Id.* The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. A service mark "shall be deemed to be in use in commerce . . . when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." *Id.* "The 'talismanic test' is whether the mark was used 'in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'" *See Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (internal citation omitted). Mere advertising of a service mark does not constitute "use" of the mark in commerce; rights to the mark develop when services bearing the mark are offered in United States commerce and are followed by continuous commercial utilization. *See Buti*, 139 F.3d at 103–04 (finding the party's mere promotional activities, absent proof of services offered in commerce, did not establish the party's rights to the service mark); *see also La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir. 1974) ("89 sales in 20 years

[does not] constitute[] the kind of bona fide use intended to afford a basis for trademark protection.").

Here, PFW argues that it established ownership rights to the service marks "Public Free Will" and "Free Will" when it used the marks in the following instances: (1) its application, in the name of "Public Free Will Corp.," for a Certificate of Incorporation with DOS; (2) its application, in the name of "Free-Will," for "Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code"; and (3) its application, in the name of "Free Will," for a grant from the VA. (*See* Am. Compl. at ¶¶ 13, 15–16; Pl.'s Opp'n to Mot. Dismiss at 9–10.) Other than stating that "commerce" under the Lanham Act relates to all commerce regulated by Congress, PFW provides no legal bases to establish that filing applications to state and federal agencies constitutes "use in commerce" sufficient to provide ownership rights to a service mark. (*See* Pl.'s Opp'n to Mot. Dismiss at 9–10.)

Although PFW's service mark may have been "exposed to the public" when DOS published the name "Public Free Will" on its database, PFW's amended complaint fails to allege that PFW has used its service marks commercially in connection with the services it intended to offer. Just as the mere advertisement of a service mark is insufficient to establish ownership rights, PFW's mere public filings of its service marks are insufficient to establish ownership rights based on the marks' "use in commerce." *See Buti*, 139 F.3d at 103–04; *Int'l Healthcare*, 470 F. Supp. 2d at 371. At best, PFW's allegations demonstrate that it filed the service marks and planned to provide future services. Absent allegations suggesting that the service marks have been used in connection with actual services to homeless veterans and disadvantaged individuals, PFW fails to allege facts that establish it has a protectable service mark under the Lanham Act.

B. Verizon's Alleged Use of PFW's Service Mark

Assuming *arguendo* that PFW has a protectable service mark under the Lanham Act, PFW must also establish that Verizon used PFW's service mark in commerce without its consent. *See 1-800 Contacts*, 414 F.3d at 407. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff alleging trademark infringement must provide "factual allegations concerning the nature of the [defedant's] use" in order to "give the defendant[] fair notice of the claims against [it] . . . ." *Dow Jones*, 451 F.3d at 307.

Here, PFW's amended complaint alleges that, sometime after PFW filed its applications to government agencies, Verizon engaged in a "widespread multi-medium advertising campaign" for a telecommunication service featuring the term 'Free Will.'" (*Id.* at ¶¶ 17, 19.) PFW does not provide any facts, details, or descriptions concerning erizon's alleged advertisement, nor does it provide a copy of a Verizon advertisement that uses the term "Free Will." Such a "conclusory allegations unsupported by factual assertions . . . fails even the liberal standard of Rule 12(b)(6)." *Dow Jones*, 451 F.3d at 307 (citation and quotation marks omitted).

C. Likelihood of Confusion

Moreover, PFW has failed to allege a plausible claim of infringement as it has failed to alleged facts sufficient to give rise to a likelihood of confusion pursuant to the well-known *Polaroid* factors. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).[3]

---

[3] If a plaintiff establishes ownership of a protectable service mark, the Court must then determine whether defendant's alleged use of the mark causes a likelihood of confusion as to the source of the services. *See 1-800*, 414 F.3d at 407; *Time, Inc.*, 173 F.3d at 117; *see also Innovation Ventures*, 176 F. Supp. 3d at 153. In addressing likelihood of confusion, courts apply the following eight *Polaroid* factors set forth by the Second Circuit: (i) the strength of plaintiff's mark; (ii) the similarity of the parties' marks; (iii) the proximity of the parties' products in the marketplace; (iv) the likelihood that the plaintiff will bridge the gap between the products; (v) actual confusion; (vi) the defendant's intent in adopting its mark; (vii) the quality of the defendant's product; and (viii) the sophistication of the relevant consumer group. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). None of these factors are dispositive, and courts should focus on the ultimate question of whether consumers are likely to be confused, instead of mechanically finding a winner by determining which party has the most factors in its favor. *See Nabisco*, 220 F.3d at 46.

PFW argues that likelihood of confusion "involves questions of fact that should be determined in view of discovery." While the inquiry is ultimately a fact-sensitive question as PFW argues (Pl.'s Opp'n to Mot. Dismiss at 11), a plaintiff is still required to allege facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 677. Here, PFW merely asserts legal conclusions that track the text of 15 U.S.C. § 1125 and the *Polaroid* factors which are insufficient to give rise to a plausible claim. See *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 345–46 (E.D.N.Y. 2014) (granting a motion to dismiss for failure to state a claim where plaintiffs' allegations were legal conclusions that merely tracked the text of 15 U.S.C. § 1125(a) and the *Polaroid* factors). PFW's amended complaint states that "the most telling" *Polaroid* factors in this case are "the 'degree of similarity of the two marks' and the 'sophistication of the buyers.'" (Am. Compl. at ¶ 28.) However, aside from its allegation that Verizon engaged in "a multi-medium advertising blitz with a very similar mark," PFW provides no facts in its amended complaint sufficient to suggest that the marks, as a whole, are confusingly similar. (*See* Am. Compl. at ¶ 28); *see also Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 117 (2d Cir. 1984) (comparing each mark in its entirety to determine whether the marks as a whole are confusingly similar). Moreover, PFW simply states that "the homeless and disadvantaged are not in a highly sophisticated cohort"; therefore, there is a high likelihood they would be confused as to the source of sheltering services when confronted by Verizon's alleged advertising campaign. (*See* Am. Compl. at ¶ 28.) PFW alleges no other facts to state a plausible claim of a likelihood of confusion, or facts to support the other *Polaroid* factors. Accordingly, PFW fails to sufficiently plead facts that state a claim for infringement under the *Twombly/Iqbal* pleading standard.

## II. Tortious Interference with Prospective Economic Advantage

PFW's amended complaint also includes a New York state law claim for tortious interference with prospective economic advantage. (Am. Compl. at ¶¶ 35–36.) In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must establish the following: "(1) [the plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim for relief under each element of the tortious interference claim. *See Carson*, 11 F. Supp. 3d at 337 (finding that in order to withstand a motion to dismiss, plaintiffs must allege facts sufficient to establish each element of the tortious interference claim); *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007) (dismissing complaint because plaintiff failed to allege any facts to support the third element of tortious interference: that the defendant was motivated solely by malice, "beyond mere self-interest or other economic considerations").

In the case at hand, PFW's amended complaint alleges that "Verizon's deliberate launch and running of an ad campaign using Plaintiff's service mark, either in knowledge of Plaintiff's rights in said mark, or in willful ignorance thereof, caused Plaintiff to be refused for consideration as an applicant for a grant from the VA." (Am. Compl. at ¶ 36.) PFW argues that its grant application with the VA and the subsequent denial of funds due to Verizon's advertisement campaign establish the first and fourth elements of tortious interference: a business relationship with a third party and Verizon's interference, which caused injury to the relationship. (Pl.'s Opp'n to Mot. Dismiss at 13.) Even assuming this to be true, which is not at all a given under the law, PFW concedes in its opposition brief that it has pleaded, at best, only

10

these two out of the four elements of its tortious interference claim. (*See* Pl.'s Opp'n to Mot. Dismiss at 12–13.) PFW argues that it can plead the two remaining elements only after discovery. (*See id.*) However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. As the courts in *Carson* and *S&L* indicate, PFW must allege facts sufficient to state a plausible claim for relief under each element of the tortious interference claim. *See Carson*, 11 F. Supp. 3d at 337; *S&L*, 521 F. Supp. 2d at 217. PFW provides no factual allegations that Verizon had knowledge of PFW's alleged business relationship with the VA and provides no allegations that Verizon's advertising campaign was "motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations." *See S&L*, 521 F. Supp. 2d at 217; (*see generally* Am. Compl.) Accordingly, PFW has failed to allege sufficient facts to state a plausible claim of tortious interference with prospective economic advantage.[4]

---

[4] In the conclusion of its opposition brief, PFW makes passing reference to amending the complaint for a second time. (*See* Pl.'s Opp'n to Mot. Dismiss at 14.) However, PFW asserts no basis for any such amendment and fails to specify how another amendment could cure its pleading deficiencies. Courts may deny a plaintiff's request to amend its complaint when the plaintiff "failed to resolve its pleading deficiencies in its First Amended Complaint" and "entirely failed to specify how it could cure its pleading deficiencies." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505–06. Accordingly, plaintiff's request to seek a further amendment is denied.

## CONCLUSION

For the reasons set forth above, Verizon's motion to dismiss PFW's amended complaint (Doc No. 26) is granted. *See* Fed. R. Civ. P. 12(b)(6).

The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge

Dated: Brooklyn, New York
March 17, 2017